RAY BAROZZI AND RUTH BAROZZI, Appellants, v. BRUNO BENNA, STEVE BENNA, AND C.B. CONCRETE, Respondents.

No. 25659

May 30, 1996

918 P.2d 301

*David Allen & Associates* and *James Andre Boles; Richard F. Cornell,* Reno, for Appellants.

*Bible, Hoy, Trachok, Wadhams and Zive,* Reno, for Respondents.

## OPINION

*Per Curiam:*

Appellants Raymond and Ruth Barozzi filed a complaint against respondents Bruno Benna, Steve Benna and CB Concrete Company ("CBC") to enforce, as third-party beneficiaries, an alleged oral agreement between Bruno and Bilt-Rite Concrete. The action was comprised of four claims relevant to this appeal:

(1) breach of contract; (2) breach of implied covenant of good faith and fair dealing; (3) breach of fiduciary duty by Bruno in his capacity as a director of First Interstate Bank ("FIB"); and (4) intentional infliction of emotional distress by Bruno in intentionally violating his fiduciary duty.

The district court granted respondents' motion for summary judgment and awarded the Bennas $50,000 in attorney's fees, finding the claims were not reasonably grounded. The Barozzis appeal the attorney's fees award. We hold that the frivolousness of a claim is determined at the time the claim is filed, and conclude that the Barozzis' first two claims were reasonably grounded at the time of filing. Therefore, we remand the case to the district court to apportion the attorney's fees between the grounded and groundless claims.

## FACTS

In September 1987, Max Barozzi and Red Taliaferro formed a concrete "placing" company named Bilt-Rite Concrete, Inc. ("Bilt-Rite"). Prior to that time, Max and Red worked many years for I. Christensen Co., which was owned by Bruno Benna.[1] Sometime after Bilt-Rite was formed, Bruno stopped operating I. Christensen Co.

Max and Red eventually borrowed over $230,000 from FIB in order to operate Bilt-Rite. Initially, the loans were personally guaranteed by Max, Red, and Max's parents, Raymond and Ruth Barozzi, but eventually, FIB also required a certificate of deposit of $100,000, which the Barozzis provided.

In 1989, Max and Red also obtained a $175,000 loan from Bruno to help meet payroll; this loan was paid in full. In 1990, Bruno refused to loan Max and Red an additional $250,000, because they owed him approximately $180,000 for concrete they had purchased on an open account. Around this time, Bruno began operating I. Christensen Co. again.

In February 1990, a meeting took place between Max, Red, Bruno, and Steve, in which the following was agreed upon: (1) Max and Red would stop operating Bilt-Rite; (2) Max and Red would return to work at I. Christensen Co.; (3) Bilt-Rite would transfer all of its equipment to CBC in consideration of their outstanding $180,000 debt; and (4) CBC would finish all Bilt-Rite projects at cost, and transfer any profit to Max and Red. During sworn deposition testimony, Max asserted that he told Bruno that the FIB notes must be part of any agreement, and that Bruno stated in response, "That's fine," and "Let's get to work." However, during that same deposition, Max conceded that Bruno

---

[1] I. Christensen Co. was a subsidiary of CBC.

never agreed to assume the FIB debt. Moreover, Bruno, Steve, and Red all denied that the Bennas had committed to assume the FIB debt.[2]

In August 1990, FIB began demanding payment on the outstanding loans made to Bilt-Rite, since the loans were in default. FIB gave notice to the Barozzis that it was going to require payment on the guarantees. The Barozzis paid the notes which were thereafter assigned to them.[3] Based upon Max's assertion that the FIB loans were part of the agreement with Bruno and Steve, the Barozzis filed suit against the Bennas, claiming: (1) breach of contract; (2) breach of implied covenant of good faith and fair dealing; (3) breach of fiduciary duty by Bruno in his capacity as FIB director; and (4) intentional infliction of emotional distress by Bruno in intentionally violating his fiduciary duty.

On March 26, 1993, respondents filed a motion for summary judgment, which the district court granted. In January 1994, the Bennas filed a motion for attorney's fees and sanctions, pursuant to NRS 18.010(2)(b) and NRCP 11. The district court acknowledged that the Barozzis were unfortunate "victims" of Max's misrepresentations which triggered the filing of the lawsuit. The district court also noted, however, that in his deposition Max repudiated what he had told his parents, thus forcing respondents to defend against an action in which there was no credible evidence in support of the claims. Therefore, the district court awarded the Bennas $50,000 in attorney's fees, and sanctioned Barozzis' attorney. On appeal, the Barozzis challenge the award of attorney's fees.

## DISCUSSION

The decision to award attorney's fees is within the sound discretion of the district court, but an award made in disregard of applicable legal principles may constitute an abuse of discretion. Allianz Ins. Co. v. Gagnon, 109 Nev. 990, 995, 860 P.2d 720, 724 (1993).

The Barozzis contend that NRS 18.010(2)(b)[4] allows an assess-

---

[2]Red was no longer employed at I. Christensen Co. when he filed an affidavit denying that Bruno and Steve agreed to assume the FIB loans.

[3]The notes totalled $233,086.41.

[4]NRS 18.010(2)(b) states, in relevant part: "[T]he court may make an allowance of attorney's fees to a prevailing party: . . . (b) . . . when the court finds that the claim . . . of the opposing party was brought without reasonable grounds or to harass the prevailing party."

ment of attorney's fees only if the grounds for the action are unreasonable at the time of filing. In Duff v. Foster, 110 Nev. 1306, 1308, 885 P.2d 589, 591 (1994), this court emphasized that the proper inquiry is whether the claim "was brought" without reasonable grounds. We also agreed that " '[i]f an action is not frivolous when it is initiated, then the fact that it later becomes frivolous will not support an award of fees.' " Id. at 1309, 885 P.2d at 591 (quoting State of Florida, Dep't of Health and Rehabilitative Servs. v. Thompson, 552 So. 2d 318, 319 (Fla. Dist. Ct. App. 1989)).

Respondents cite to Allianz in contending that " '[a] claim is groundless if the allegations in the complaint . . . are not supported by any credible evidence at trial.' " 109 Nev. at 996, 860 P.2d at 724 (quoting Western United Realty, Inc. v. Isaacs, 679 P.2d 1063 (Colo. 1984)) (emphasis added). Although Allianz and Duff appear to differ concerning the relevant point in time when a claim is determined to be groundless, upon closer examination it is apparent that there is no conflict between the two cases.

In Allianz, the district court determined that the plaintiff's claims were "grossly inflated and fraudulent," based in part on false representations. But the district court rejected a request for attorney's fees because it could find no authority for the proposition that fraudulent claims are also groundless. This court reversed, stating that a claim is groundless if not supported by any credible evidence at trial.

We nevertheless considered appellant's argument that the claim was well grounded when initiated, but that the evidence had become stale in the years preceding trial. Although we rejected the argument as inconsistent with the lower court's finding of fraud, we recognized that "[i]f factually true, this argument could have merit." 109 Nev. at 996, 860 P.2d at 725.

Moreover, a review of the authorities upon which Allianz and Duff rely supports the conclusion that under NRS 18.010(2)(b), frivolousness is determined at the time the claim is initiated. Allianz quotes Isaacs, a Colorado case. Under Colorado law "[t]he court shall not award attorney's fees among the parties unless it finds that the bringing, maintaining, or defense of the action against the party entitled to such award was frivolous or groundless." 679 P.2d at 1066. In contrast, the Nevada statute only speaks of bringing suits without reasonable ground, not maintaining them. See NRS 18.010(2)(b). Since the Colorado statute expressly addresses the maintaining of a frivolous claim,

it is understandable that the *Isaacs* court would look to the trial when determining the credibility of the claim for the purpose of assessing attorney's fees. However, since NRS 18.010(2)(b) only references the *bringing* of groundless suits, the *Duff* court's focus on the point when the claim is *initiated* follows the language of the Nevada statute more closely than does the language in *Allianz*.

*Duff* cites *Thompson,* a Florida case, in support of its ruling. Under Florida law "[t]he court shall award a reasonable attorney's fee . . . in any civil action [in] which the court finds that there is a complete absence of a justiciable issue of either law or fact raised by the complaint or defense of the losing party." Fla. Stat. Ann. § 57.105 (West 1994). The Florida statute speaks of "complaints," which more closely parallels NRS 18.010(2)(b), in that it focuses on the time the claim is initiated. Thus, we conclude that the rule pronounced in *Duff* remains the appropriate rule under NRS 18.010(2)(b).

In the instant case, it is apparent that the district court felt that the first and second claims, which related to the contract, were not frivolous when the action was initiated. Although the district judge did state at one point during the hearing on attorney's fees that the Barozzis "didn't have legitimate grounds to file the case," the judge also stated during the hearing that he wanted the attorneys to focus their arguments on "why the defendants shouldn't be awarded attorney's fees from the time it became clear that [Max's] testimony *would not be as it apparently was in the first instance* when he talked to Mr. Boles [the Barozzis' attorney]." (Emphasis added.) Significantly, in its written order, the district court also opined that the Barozzis were "unfortunate victims of representations made by their son, Max Barozzi, which, apparently, triggered the filing of the instant law suit, and which were not supported by the evidence."

Moreover, the record reflects that the Barozzis made a reasonable investigation into the first and second claims. The affidavit of the Barozzis' trial counsel states that Max told the Barozzis and their counsel at separate times that the Bennas had agreed to make the FIB loans part of the contract. The affidavit also reveals that an attempt to meet with Bennas' counsel prior to filing was unsuccessful. Although Bennas' counsel indicated that he had one or more documents that would clearly establish that there was no liability on the part of the Bennas, he refused to produce the documents prior to filing. Attempts by the Barozzis to talk to Red and his reported counsel were also unsuccessful. Without anything to directly discredit Max's statements, the Barozzis filed the contract claims. For the above-enumerated reasons, we conclude

that the Barozzis had reasonable ground upon which to bring the contract claims. Since the contract claims proved groundless after the suit was initiated, the order awarding attorney's fees with regard to those claims is improper. We therefore reverse that part of the award.

In imposing sanctions, the district court stated that "there is not one single shred of credible evidence to support the proposition that Mr. Benna breached any fiduciary responsibility or duty to any person in this litigation by virtue of his having been on the Board of Directors of First Interstate Bank." The record reveals that if the Barozzis had conducted even a cursory investigation into the matter, they would have found that only loans of $1 million or more were presented to the board of directors for action, and since the loan in question was far below $1 million, Bruno and the board of directors would have had no connection with FIB's decision to call the loan and resort to the collateral. The Barozzis argued that "considering the size of the debt, it was reasonable to assume that the Bank's Board of Directors would have known about this debt before the Bank decided to look to BAROZZI." However, as the district court noted, "all 'theories' must be supported by, at least, some evidence prior to becoming a cause of action in a publicly filed law suit." We therefore conclude that the district court did not abuse its discretion in finding that the third and fourth claims had no reasonable grounds.

## CONCLUSIONS

For the reasons discussed above, we reverse the district court's order awarding attorney's fees for the first and second claims, and remand for a redetermination of fees limited only to the groundless claims. *See* Bergmann v. Boyce, 109 Nev. 670, 675, 856 P.2d 560, 563 (1993) ("The prosecution of one colorable claim does not excuse the prosecution of [other] groundless claims").

SPRINGER, J., dissenting:

I disagree with the majority's hair-splitting analysis of the trial court's decision in this case. I agree with the trial court's reasoning and decision; therefore, I respectfully dissent.